# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DANIEL W. BRANTLEY,         )
                                  )
       Petitioner,        )
                                  )
v.                           )     Case No. 14-CV-136-JED-PJC
                                  )
JOE M. ALLBAUGH, Director,    )
                                  )
       Respondent.      )

## OPINION AND ORDER

Before the Court are Petitioner's 28 U.S.C. § 2254 habeas corpus petition (Doc. 1) and supplemental petition (Doc. 20). Petitioner is a state inmate and appears *pro se*. Respondent filed a response (Doc. 11) to the original petition and provided the state court record (Docs. 11, 12, 13) for resolution of the claims raised in the petition. Petitioner filed a reply (Doc. 14) to the response. Respondent also filed a supplement response (Doc. 24) to the supplemental petition, along with supplemental state court records (Docs. 24, 25). Petitioner filed a reply (Doc. 26) to the supplemental response. For the reasons discussed below, both the original petition for writ of habeas corpus and the supplemental petition shall be denied.

## *BACKGROUND*

In 2011, Petitioner Daniel Brantley lived with his wife, Lorene, and three daughters, S.B., and twins Re.B. and Ra.B., at 3708 South Dogwood Avenue, Broken Arrow, Oklahoma. In May of that year, thirteen (13) year old J.K. visited the home of her friends, the Brantley twins. J.K. claimed that, as she, the twins, and Petitioner were watching television, Petitioner, who was sitting on a couch behind J.K., wrapped his legs around her by criss-crossing them across her waist. Petitioner began to massage J.K.'s shoulders, then moved his hands down to her chest and started

rubbing and squeezing her breasts.  Petitioner whispered to J.K., "I'm going to take a nap, would you like to come with me?"  J.K. moved Petitioner's legs from around her waist, got up and went to the twins' bedroom where she called her mother and asked to be picked up.  J.K.'s mother picked her up shortly thereafter.  Initially, J.K. did not tell anyone what had happened because her father was a good friend of Petitioner and she thought she would not have been believed.

Near the end of June 2011, another friend of the twins, thirteen (13) year old S.P., was at the Brantley home for a sleepover.  While watching television with the twins and Petitioner, S.P. sat in front of Petitioner between his legs.  According to S.P., Petitioner put his hands up her shirt and touched her breasts with both of his hands.  After she pushed his hands away, Petitioner slid his hands inside her panties and he touched her "private spot."  As S.P. got up to go the bathroom, Petitioner told her to take off her bra and panties.  S.P. did not comply with Petitioner's request.  Upon returning to the living room, she sat beside one of the twins.  Petitioner then came over to her and asked her to sit by him on the couch to "do some stuff" with him.  S.P. said she was tired.  She and the twins went to the twins' bedroom. Shortly afterwards, S.P. went to the kitchen to get a drink of water.  While in the kitchen, Petitioner told S.P. he wanted to talk to her in the living room.  S.P. went to the living room with Petitioner.  Petitioner said he was sorry for touching her and that she was attractive to him.  He also invited her to "experiment" with him and that if she was too hot in the twins' bedroom, she should sleep with him on the couch.  S.P. returned to the twins' bedroom.

On August 5, 2011, Petitioner called J.K. on her cell phone and invited her to come over. Petitioner told J.K. that "if you want to experiment with someone, I'm always here."  Petitioner ended the conversation by saying, "OK, I love you, honey, bye."

J.K. and S.P. eventually told their mothers what had happened.  The two girls then filed police reports.  As a result, Petitioner was charged in Tulsa County District Court, Case No. CF-2011-3557, with two (2) counts of Lewd Molestation (Counts 1 and 2), and two (2) counts of Lewd or Indecent Proposal to a Child (Counts 3 and 4).  During his jury trial, Petitioner testified in his own defense and denied the accusations against him.  Petitioner's jury found him guilty as charged and recommended sentences of eight (8) years imprisonment and a $4,000 fine on Count 1, ten (10) years imprisonment and a $5,000 fine on Count 2, five (5) years imprisonment and a $2,500 fine on Count 3, and six (6) years imprisonment and a $3,000 fine on Count 4.  On October 1, 2012, the trial judge sentenced Petitioner in accordance with the jury's recommendation, ordering the sentences to be served consecutively and suspending the sentence on Count 3.  *See* Doc. 12-6 at 3-4.  During trial proceedings, Petitioner was represented by attorneys R. Scott Williams and Robert Taylor.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA).  On direct appeal, Petitioner, represented by attorney Mark P. Hoover, raised one (1) proposition of error, as follows:

Proposition:   Prosecutorial misconduct deprived Appellant of a fair trial.

(Doc. 11-1).  On January 10, 2014, in an unpublished summary opinion filed in Case No. F-2012-911, the OCCA denied relief and affirmed the Judgment and Sentence of the trial court.  *See* Doc. 11-3.  Petitioner did not file a petition for writ of certiorari at the United States Supreme Court.

On March 20, 2014, Petitioner filed his federal petition for writ of habeas corpus (Doc. 1), alleging, as he did on direct appeal, that prosecutorial misconduct deprived him of a fair trial.  Respondent filed a response (Doc. 11) to the petition and asserts that, under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief.

3

On September 16, 2014, almost six (6) months after filing his habeas petition, Petitioner filed an application for post-conviction relief (Doc. 24-1) in state district court. On June 1, 2015, the state district judge denied the requested relief (Doc. 24-2). Petitioner appealed, raising four (4) propositions, as follows:

> Proposition 1: Appellate counsel failed to properly analyze and prepare for the direct appeal.
>
> Proposition 2: Appellate counsel failed to properly act on petitioner's requests.
>
> Proposition 3: Appellate counsel failed to cite ineffective trial counsel.
>
> Proposition 4: Appellate counsel failed to ask for an evidentiary hearing.

(Doc. 24-4 at 4-7). Petitioner also sought an evidentiary hearing (Doc. 24-5). On December 15, 2015, in Case No. PC-2015-603, the OCCA affirmed the denial of post-conviction relief (Doc. 24-6). On January 6, 2016, Petitioner filed a "Supplement to Habeas Corpus 2254 Application and Brief in Support" (Doc. 20). Petitioner supplements the original petition with four claims of ineffective assistance of appellate counsel, as raised in state post-conviction proceedings. Respondent filed a supplemental response (Doc. 24), arguing that, under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of appellate counsel.

## ANALYSIS

### A.  Exhaustion/Evidentiary Hearing

Before addressing Petitioner's habeas claims, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b). *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Petitioner's claims raised in the original and supplemental petitions were presented to the OCCA on direct and post-conviction appeal, respectively, and are exhausted.

4

The Court also finds that Petitioner is not entitled to an evidentiary hearing.  *See Cullen v. Pinholster*, 563 U.S. 170, 184-85 (2011); *Williams v. Taylor*, 529 U.S. 420 (2000).

## B.  Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011); *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice."  *White*, 134 S. Ct. at 1702 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).  The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* (quoting *Richter*, 562 U.S. at 103); *see also Metrish v. Lancaster*, 133 S. Ct.

1781, 1787 (2013).  Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d).  *Richter*, 562 U.S. at 98; *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Here, Petitioner presented his habeas claims to the OCCA on direct and post conviction appeal.  Because the OCCA addressed Petitioner's claims on the merits, the Court will review the claims under the standards of § 2254(d).

### 1.  Prosecutorial misconduct (original petition)

In the single ground of error raised in the original petition (Doc. 1), Petitioner claims that he was deprived of a fair trial by prosecutorial misconduct.  Specifically, Petitioner claims that the prosecutor improperly attempted to define reasonable doubt, vouched for the credibility of a witness, and introduced victim impact evidence to elicit sympathy for the victim.  *Id.* at 4-17.

Prosecutorial misconduct, if it occurs, can "create constitutional error in one of two ways." *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009). "First, prosecutorial misconduct can prejudice 'a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right.'"  *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). When this occurs, a petitioner need not show that his entire trial was rendered fundamentally unfair. *See Dodd v. Trammell*, 753 F.3d 971, 990 (10th Cir. 2013). "Second, even if the prosecutor's improper remarks do not impact a specific constitutional right, they may still create reversible error if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Matthews*, 577 F.3d at 1186 (quoting *Donnelly*, 416 U.S. at 643).

In this case, the record reflects that defense counsel did not object to the prosecutor's remarks.  As a result the OCCA reviewed for plain error.  Oklahoma defines plain error as "an error

which goes to the foundation of the case, or which takes from a defendant a right essential to his defense," *Simpson v. State*, 876 P.2d 690, 698 (Okla. Crim. App. 1994), and "impinges on the fundamental fairness of trial." *Cleary v. State*, 942 P.2d 736, 753 (Okla. Crim. App. 1997). "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015); *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (finding "no practical distinction between the formulations of plain error . . . and the federal due-process test, which requires reversal when error so infused the trial with unfairness as to deny due process of law" (citation and internal quotation marks omitted)). When the OCCA rejects a claim "under the plain-error standard, the decision effectively disallow[s] the possibility of a due process violation." *Hancock*, 798 F.3d at 1011.

The Court shall address each allegation of prosecutorial misconduct.

### a. Improper attempt to define reasonable doubt

First, Petitioner complains of the following exchange between the prosecutor and the potential jurors during voir dire:

Prosecutor:    The burden is beyond a reasonable doubt and it is, I'll tell you now, the highest burden that there is. There's some people on this panel who have served in civil trials, car wrecks and med mal cases. And your burden was probably preponderance of the evidence, more likely than not.

That's not why we are here today. We're not at [sic] I have to prove to you that it's more likely than not that it happened. I have to prove to you beyond a reasonable doubt that what we've alleged happened.

But that is not beyond all doubt, beyond a shadow of a doubt, a hundred percent, or any of those other things. beyond a reasonable doubt will not be defined for you, probably the only thing that won't be defined for you to be perfectly honest. I won't tell you what it means, even Judge Gillert won't tell you what it means. It's not defined. It's a personal thing. And there are any number of ways that you can think about it. In the past I've thought of it this way. If right now you went back to the jury deliberating

7

room and you went to deliberate, what would your verdict right now be in the case?

Venireman:     It would have to be innocent.

Prosecutor:     Not guilty because you've heard no evidence; right?  Right now your cup is empty.  You have absolutely nothing in here.  But as witnesses take the stand and testify and evidence is admitted, water will slowly go into each of you individually have a cup; right, metaphorically?  And water will slowly go in there, and at some point you might say, I'm at beyond a reasonable doubt.

Your cup may not be filled [to] the same height as [the cup held by the] person sitting next to you.  And it doesn't have to be all the way full because it's when you have heard enough credible evidence to believe that there is no reasonable doubt.  It's not no doubt.  It's no reasonable doubt.

Another example I've used in the past.  We live in Oklahoma and it's August so it's really hard to think about it, but remember Snowmaggedon?  Do you remember those times in Oklahoma where you woke up and you actually didn't know until you woke up and you looked outside there was snow blanketing the front yard?

Now, if you look out your window and see white as far as the eye can see, what do you assume happened?

Panel:     It snowed.

Prosecutor:     Do you sitting with your coffee in your kitchen looking out the window have any reasonable doubt that it snowed?

Panel:     No.

Prosecutor:     Did you see it snow if it's not snowing when you wake up?  Is it possible, not probable, but is it possible that somebody in your life went out and rented a snowblower and spent the whole night blowing snow into your front yard as far as the eye can see, and they're just playing an extraordinarily elaborate prank on you and it didn't really snow?  It would be a good one.  It's possible, but it's certainly not reasonable, is it?  You don't that morning have any reasonable doubt that it snowed where you live the night before.

Is there anyone who feels that they will not be able – does anyone feel they would require more, more than beyond a reasonable doubt?  That they cannot convict a person or if they convict someone, cannot decide to send someone to prison unless they are more than beyond a reasonable doubt,

unless they are a hundred percent sure even though that's not what the law says. Any hands? No hands.

(Doc. 1 at 6-8, citing Tr. Vol. I at 80-82). Defense counsel did not object to these questions. *See* Dkt. 12-3, Tr. Vol. I at 80-82. On direct appeal, the OCCA cited *Mitchell v. State*, 270 P.3d 160, 171-73 (Okla. Crim. App. 2011), and *Phillips v. State*, 989 P.2d 1017, 1028 (Okla. Crim. App. 1999) and found that "[t]he comments at issue in the present case were attempts to dispel commonly held attitudes and often heard phrases and these comments did not rise to the level of plain error." *See* Doc. 11-3 at 2.

A prosecutor's attempt to define reasonable doubt implicates a defendant's specific constitutional right. *See Dodd*, 753 F.3d at 990-91 (analyzing claim that State improperly characterized its burden of proof to determine if the misconduct "effectively deprived the defendant of a specific constitutional right"); *Morris v. Workman*, 382 F. App'x 693, 696 (10th Cir. 2010) (unpublished)[1] ("Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence, a petitioner may obtain relief by demonstrating that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." (internal quotation marks and citation omitted)).

The OCCA reviewed Petitioner's prosecutorial misconduct claim for "plain error" and found none. As explained above, this Court must defer to the OCCA's ruling unless it "unreasonably appli[ed]" the test. *Thornburg*, 422 F.3d at 1125.

The exchange cited above demonstrates that the prosecutor's questions and statements were clearly intended to ascertain whether the potential jurors were able to apply the "reasonable doubt"

---

[1]This and all other unpublished opinions herein are not precedential but are cited for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

standard.   The Court finds that the OCCA reasonably applied federal law when it found no error in

these comments.  *See, e.g.*, *id.* at 1130 ("[T]o state that 'beyond a reasonable doubt' does not mean

beyond 'a shadow of a doubt or all doubt' was not a constitutional violation."); *Gordon v. Ward*, 118

F. App'x 434, 436 (10th Cir. 2004) (unpublished) (finding OCCA's conclusion that a "prosecutor's

comments during voir dire that 'reasonable doubt' does not mean 'beyond a shadow of a doubt' or

'beyond all doubt' does not constitute error" was not contrary to or an unreasonable application of

clearly established federal law).  The Court concludes that the OCCA's decision was not contrary

to, or an unreasonable application of federal law as determined by the Supreme Court, nor was it

based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceedings. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim of

prosecutorial misconduct.

### b.  Improper vouching for witness credibility

Next, Petitioner complains, as he did on direct appeal, that the prosecutor improperly

vouched for the credibility of one of the victims.  Specifically, Petitioner cites to the following

portion of the prosecutor's closing argument:

> So there's a whole lot we know for sure this little girl is not lying about.  And
> we know that the defendant pulled [S.P.] out of that room later on and wanted to talk
> to her privately.  Now the only two things we can't agree on, funny enough, are the
> two things that amount to felony crimes:  Whether Dan [Brantley] touched that little
> girl and whether Dan said, I'm sorry, I'm attracted to you, I want to keep
> experimenting, you can come in and sleep on the couch with me if you want.

(Doc. 1 at 12 (citing Tr. Vol. II at 390)).  Petitioner argues that, by using the phrase "we know," the

prosecutor "inject[ed] her own personal beliefs into the trial . . . [and] undermined the deliberative

process."  *Id.*   The OCCA found no error, citing *Grissom v. State*, 253 P.3d 969, 992 (Okla. Crim.

App. 2011), and stating that "[t]he parties are allowed a wide range of discussion and illustration in

closing argument and counsel enjoys a right to fully discuss, from her standpoint, the inferences and deductions arising from the evidence." *See* Doc. 11-3 at 2.

The trial judge instructed Petitioner's jury that:

> in closing arguments the attorneys may review the evidence and tell you the inferences that they believe should be drawn from the evidence. They are also allowed to discuss with you how they believe these instructions related to the evidence that has been introduced. Arguments of counsel are not evidence in the case and if you believe the evidence introduced is different from counsel's recollection, your recollection controls.

*See* Doc. 12-9, Supp. O.R. at 36-37, Instruction No. 33. Furthermore, during closing arguments, counsel is allowed some latitude. *See Hooper*, 314 F.3d at 1172 ("The prosecutor also possesses reasonable latitude in drawing inferences from the record."); *see also Banks v. Workman*, 692 F.3d 1133, 1149 (10th Cir. 2012). "[S]ummations in litigation often have a rough and tumble quality." *U.S. v. Bennett*, 75 F.3d 40, 46 (1st Cir. 1996). It is important to note that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Banks*, 692 F.3d at 1149 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). To be entitled to habeas relief, the remarks must infect the trial with unfairness. *Id.*

Argument or evidence is permissible vouching unless "'the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.'" *Thornburg*, 422 F.3d at 1132 (quoting *U.S. v. Magallanez*, 408 F.3d 672, 680 (10th Cir. 2005) (internal quotation marks omitted)); *see also U.S. v. Bowie*, 892 F.2d 1494 (10th Cir. 1990). A prosecutor's vouching for the credibility of witnesses can "jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury[,] and the prosecutor's opinion carries with it the imprimatur of the Government and may

induce the jury to trust the Government's judgment rather than its own view of the evidence." *U.S. v. Young*, 470 U.S. 1, 18-19 (1985) (citing *Berger v. U.S.*, 295 U.S. 78, 88-89 (1935)).   Yet, "[i]mproper vouching for witnesses is not considered to impact an express constitutional right." *U.S. v. Harlow*, 444 F.3d 1255, 1266 (10th Cir. 2006); *Parker v. Scott*, 394 F.3d 1302, 1310 (10th Cir. 2005).   A habeas court reviews such claim for a denial of due process and "'must find that the absence of [fundamental] fairness fatally infected the trial [and] the acts complained of must be of such quality as necessarily prevents a fair trial.'"   *Parker*, 394 F.3d at 1310-11 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)).

After a review of the record, the Court finds that the prosecutor's statement was not improper and did not deprive Petitioner of a fair trial.   The comments made by the prosecutor regarding the incident involving S.P. were fair inferences from the testimony and evidence.   The Court finds these statements to be proper.   The Court concludes that the OCCA's decision was not contrary to, or an unreasonable application of federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim of prosecutorial misconduct.

### c.  Improperly eliciting sympathy for the victims

Petitioner also complains that the prosecutor improperly elicited sympathy for the victims by introducing evidence demonstrating the impact of the victims' allegations against Petitioner on their friendships with Petitioner's daughters.   *See* Doc. 1 at 14-17.   That evidence included testimony that Petitioner's twin daughters terminated their friendship when the victims reported Petitioner's offenses, that J.K. changed schools as a result of the incident, and that Petitioner's daughter Ra.B.

12

blocked S.P. on her Facebook and Skype pages.  The OCCA denied relief, citing Okla. Stat. tit. 12, §§ 2401, 2403, and finding that "[t]he evidence at issue was relevant to show the victims' lack of motivation to lie and its probative value was not outweighed by the danger of unfair prejudice . . . . The introduction of this evidence did not amount to plain error."  *See* Doc. 11-3 at 2-3.

As stated above, habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's statements render Petitioner's trial fundamentally unfair.  *Donnelly*, 416 U.S. at 642-48.  It is not enough that the statements are undesirable or universally condemned. *Darden*, 477 U.S. at 181. "It is improper for a prosecutor to encourag[e] the jury to allow sympathy to influence its decision." *Stouffer v. Trammell*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks and citation omitted).  However, the prosecutor can draw reasonable inferences from the record. *Hooper*, 314 F.3d at 1172.

After reviewing the record and placing the prosecutor's comments in context, the Court concludes that the statements by the prosecutor were reasonable inferences based on the evidence and testimony presented at trial.  *See id.*  Thus, when considered in light of the trial as a whole, the Court cannot conclude that the statements "tipped the scales in favor of the prosecution." *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994).  The Court concludes that the OCCA's decision was not contrary to, or an unreasonable application of federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim of prosecutorial misconduct.

## 2.  Ineffective assistance of appellate counsel (supplemental petition)

In his supplemental petition, Petitioner identifies four (4) claims of ineffective assistance of appellate counsel.  *See* Doc. 20 at 2-6.  Petitioner presented these claims to the OCCA on post-conviction appeal.  The OCCA ruled as follows:

> Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction as it is usually a petitioner's first opportunity to allege and argue the issue.  As set forth in *Logan v. State*, 2103 OK CR 2, ¶ 5, 293 P.3d 969, post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *See Smith v. Robbins*, 528 U.S. 259, 289, 120 S. Ct. 746, 765, 145 L. Ed. 2d 756 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel.").  Under *Strickland*, a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 687-89, 104 S. Ct. at 2064-66.  And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

> While citing numerous statutes and criminal cases, Brantley cites no specific factual instances wherein appellate and trial counsel failed to effectively represent his interests.  Simply reciting various possible "errors" without relating the alleged errors to what actually happened in a particular case is insufficient to meet the burden required to show that counsel was ineffective.  Brantley has failed to establish that appellate counsel's performance was deficient or objectively unreasonable, and the record does not support the claim that counsel's performance has resulted in prejudice.  Brantley must show a reasonable probability that appellate counsel would have prevailed on direct appeal had he argued trial counsel was deficient and that these errors resulted in prejudice.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  Repeated conclusions that appellate counsel was ineffective are not sufficient proof.  This Court has held that "merely conclusory, unprovable, or unspecific claims of ineffective assistance of appellate counsel do not raise an issue of material fact."  *Logan*, 2013 OK CR 2, at ¶ 23, 293 P.3d at 978-979.

(Doc. 24-6 at 4-5).

14

Petitioner is not entitled to habeas relief on his claim of ineffective assistance of appellate counsel unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). When assessing claims of ineffective assistance of appellate counsel, this Court applies the *Strickland* two-pronged standard used for general claims of ineffective assistance of trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland*, 466 U.S. at 687; *Osborn v. Shillinger*, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002); *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. If Petitioner is unable to show either "deficient performance" or "sufficient

prejudice," his claim of ineffective assistance fails.  *Strickland*, 466 U.S. at 700.  Thus, it is not always necessary to address both *Strickland* prongs.  This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential."  *Pinholster*, 563 U.S. at 190 (noting that a habeas court must take a "highly deferential" look at counsel's performance under *Strickland* and through the "deferential" lens of § 2254(d)).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).  In *Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003), the Tenth Circuit explained that:

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

*Id.* at 1202 (citation and footnote omitted); *see also Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998).  In addition,

> [T]o satisfy <u>Strickland</u>'s deficient performance element, a habeas petitioner 'must . . . show that his appellate counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.'  To satisfy <u>Strickland</u>'s prejudice element, a petitioner must establish 'a reasonable probability that, but for his counsel's unreasonable failure to raise an issue, he would have prevailed on his appeal.'

*Kidwell v. Martin*, 480 F. App'x 929, 933 (10th Cir. 2012) (unpublished) (quoting *Robbins*, 528 U.S. at 285).  The Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly meritorious' claims, counsel need not raise meritless issues."  *Smith v. Workman*, 550 F.3d 1258,

16

1268 (10th Cir. 2008) (quoting *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004)).  To prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as a 'reasonable probability that the omitted claim would have resulted in relief.'"  *Id.*  (quoting *Neill*, 278 F.3d at 1057 & n.5).

For the reasons discussed below, the Court finds Petitioner has not demonstrated that the OCCA's adjudication of his claims of ineffective assistance of appellate counsel was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### a.  Failure to properly analyze and prepare direct appeal

Petitioner claims that appellate counsel "prepared and transmitted the petitioner's appeal to the Oklahoma Court of Criminal Appeals without validating the records he had received nor analyzing what documents were in his possession correctly."  *See* Doc. 20 at 2.  Petitioner complains that some jury instructions were omitted from the record on appeal, and that appellate counsel failed to properly analyze the prosecutorial misconduct claim and to argue ineffective assistance of counsel for failing to object to the instances of prosecutorial misconduct.  *Id.*

As a preliminary matter, Petitioner's claim that appellate counsel provided ineffective assistance in omitting a claim of ineffective assistance of trial counsel is discussed in subpart c, below.  As to Petitioner's claim concerning the omission of jury instructions from the record on appeal, Petitioner fails to satisfy either prong of the *Strickland* standard.  The record provided by Respondent demonstrates that the State filed a "motion for supplementation of the appeal record," requesting that the OCCA "order supplementation of the record with the jury instructions in this case, which were timely designated but not included in the transmitted appeal record."  *See* Doc. 24-

7 at 1.  The OCCA granted the request, *see* Doc. 24-8, and the appeal record was supplemented, *see* Doc. 24-9.  Because counsel requested inclusion of the jury instructions in the record on appeal, there was no deficient performance.  Furthermore, Petitioner fails to identify any claim based on the jury instructions.  Therefore, to the extent Petitioner argues that counsel failed to review the instructions and, as a result, omitted a claim, Petitioner's habeas claim fails since he identifies no omitted claim.  Even if appellate counsel performed deficiently in failing to raise a claim on direct appeal, Petitioner has not demonstrated that the result of his appeal would have been different.  Petitioner fails to satisfy the doubly deferential standard of review imposed by § 2254(d) and *Strickland* and his request for habeas corpus relief on this claim of ineffective assistance of appellate counsel is denied.

### b.  Refusal to act on Petitioner's requests

As his second claim of ineffective assistance of appellate counsel, Petitioner complains that his appellate counsel "refused" to file a bar complaint against the prosecutor and failed to raise "additional grounds" requested by Petitioner on direct appeal.  *See* Doc. 20 at 2.  First, appellate counsel did not perform deficiently in failing to file a bar complaint against the prosecutor on behalf of Petitioner.  Appellate counsel's role is to raise issues of trial and constitutional error before the state appellate court.  That role does not encompass filing a complaint against the prosecutor with the Oklahoma Bar Association on behalf of Petitioner.  Furthermore, as discussed above, appellate counsel raised claims of prosecutorial misconduct and the OCCA denied relief on the claims.  As there was no misconduct, there was no basis for a bar complaint.  Second, as to the allegation that appellate counsel failed to raise "additional grounds," Petitioner does not identify the omitted "additional grounds."  Nor does he provide any factual support for his claims.  It is well established

18

that bare allegations, without supporting facts from the record, do not warrant habeas corpus relief. *Moore v. Gibson*, 195 F.3d 1152, 1180 n.7 (10th Cir. 1999); *see also Cummings v. Sirmons*, 506 F.3d 1211, 1233-34 (10th Cir. 2007) (noting that "[w]ithout a more precise identification of what [deficiencies Petitioner] is referring to," no prejudice can be found); *Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001) (noting that conclusory allegations were insufficient to warrant habeas relief); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Therefore, Petitioner's bare allegation is insufficient to support a claim of ineffective assistance of appellate counsel. Petitioner fails to satisfy the doubly deferential standard of review imposed by § 2254(d) and *Strickland* and his request for habeas corpus relief on this claim of ineffective assistance of appellate counsel is denied.

### c.  Failure to raise claims of ineffective assistance of trial counsel

Next, Petitioner alleges that appellate counsel provided ineffective assistance in failing to raise claims of ineffective assistance of trial counsel. *See* Doc. 20 at 3-5.  Petitioner claims trial counsel provided ineffective assistance in failing (1) to object to prosecutorial misconduct, (2) to object to improper joinder of offenses, (3) to prepare an adequate defense, (4) to relay all plea offers, (5) to raise "misconduct by the District Attorney's office," and (6) to raise judicial misconduct issues. *See id.* Petitioner is not entitled to habeas corpus relief on these claims.

As to trial counsel's failure to object to prosecutorial misconduct, the Court has determined above that the three (3) claims of prosecutorial misconduct raised on direct appeal lack merit. Therefore, Petitioner cannot satisfy the prejudice prong of *Strickland* as to trial counsel's performance because he cannot demonstrate that the result of his trial would have been different had

trial counsel lodged objections.  Petitioner's underlying claim of ineffective assistance of trial counsel lacks merit.  As a result, appellate counsel did not provide ineffective assistance in failing to raise a meritless issue.  *Hawkins*, 185 F.3d at 1152.

Petitioner also claims that trial counsel provided ineffective assistance in failing to object to the joinder of Counts 3 and 4.  Specifically, Petitioner claims that "[c]harges were added and due process was violated by the misjoining addition of two additional charges and foregoing the requirement of a preliminary hearing after arraignment on these new charges."[2]  *See* Doc. 20 at 3. However, the record belies Petitioner's claim that trial counsel failed to object.  At the conclusion of the preliminary hearing, the State moved to amend the information to add two (2) counts of Indecent Proposal to a Child Under 16 (Counts 3 and 4).  *See* Doc. 12-1, Tr. Prelim. Hr'g at 63. Contrary to Petitioner's allegations, counsel lodged an objection to the request and argued that "[i]f the State wants to amend, they need to come back and amend and we get to have a preliminary hearing on the four-count Information." *Id.* at 65.  Special Judge David Youll took the matter under advisement. *Id.* at 66-67.  After allowing the parties to brief and argue the issues, Judge Youll allowed the State to amend the Information. *See* Doc. 24-12, Tr. Prelim. Hr'g Decision at 11. Thereafter, trial counsel filed a motion to quash the Amended Information and, in the alternative, sought remand for a further preliminary hearing, *see* Doc. 12-2, Tr. Mot. Hr'g at 2, and argued forcefully in support of his requests, *id.* at 4.  However, Judge Gillert denied the motion, ruling that

---

[2]In his reply to the supplemental response, Petitioner also argues that "Counts 1 and 2 were improperly joined and should have had separate trials." *See* Doc. 26 at 3.  That claim is not raised in the supplemental petition and is not properly before the Court. *See Jordan v. Wiley*, 411 F. App'x 201, 212 n.9 (10th Cir. 2011) (unpublished) ("[A]n issue raised for the first time in a traverse ... [is] not properly before the district court – a point emphasized by the fact that the district court in this case did not address [the issue].").

"the magistrate did not err" in allowing the information to be amended.  *Id.* at 5.  Based on that record, the Court finds Petitioner's claim of ineffective assistance of counsel for failing to object to the joinder of additional counts lacks factual support and the claim is meritless.  Appellate counsel did not provide ineffective assistance in failing to raise a meritless issue.  *Hawkins*, 185 F.3d at 1152.

Petitioner also alleges that trial counsel failed to "prepare an adequate defense."  In support of that allegation, Petitioner states that "[t]here is indisputable fact that trial counsel first attempted a defense by civil litigation, which he proceeded to botch."  *See* Doc. 20 at 3.  Petitioner further alleges that, because his attorney "works for a law firm practicing civil law and that his individual practice is normally conducted before the Federal Court," his attorney "misrepresent[ed] his expertise in Oklahoma criminal judicial procedure."  *Id.* at 4.  Despite those allegations, Petitioner completely fails to link any deficiency to his defense.  He does not explain what his attorney should have done to effect a different outcome at trial.  As discussed above, conclusory allegations are insufficient to warrant habeas relief.  *Humphreys*, 261 F.3d at 1022 n.2.  Petitioner fails to satisfy the doubly deferential standard of review imposed by § 2254(d) and *Strickland* and his request for habeas corpus relief on this claim of ineffective assistance of appellate counsel is denied.

Next, Petitioner claims that trial counsel failed to relay a plea offer of eighteen (18) months and appellate counsel should have raised this claim on direct appeal.  Petitioner states that "[i]t is documented that trial counsel *alluded* to being able to get an eighteen (18) month plea deal from the prosecution."  *See* Doc. 20 at 4 (emphasis added).  However, nothing in the record suggests that there was a firm plea offer of 18 months communicated from the State to defense counsel.  In the absence of any evidentiary support for the existence of a plea offer that was not communicated to

Petitioner, this claim of ineffective assistance of trial counsel fails.  As a result, appellate counsel did not provide ineffective assistance in failing to raise a meritless issue.  *Hawkins*, 185 F.3d at 1152.

Petitioner's next underlying claim of ineffective assistance of trial counsel concerns the fact that Tulsa County District Attorney Tim Harris had been specially appointed to serve as a special prosecutor for the federal government.  *See* Doc. 20 at 4.  As a result of that appointment, Petitioner claims Harris forfeited his office of District Attorney.  *Id.*  However, as noted by Respondent, the OCCA has addressed and rejected this precise claim.  *See* Doc. 12-11, *Johnson v. State*, No. F-2013-173 (Okla. Crim. App. July 17, 2014) (unpublished) (rejecting claim that District Attorney's dual commission prohibited prosecution of case).  Thus, had appellate counsel raised this claim on direct appeal, relief would have been denied based on the reasoning expressed in *Johnson*.  This claim of ineffective assistance of trial counsel lacks merit.  As a result, appellate counsel did not provide ineffective assistance in failing to raise a meritless issue.  *Hawkins*, 185 F.3d at 1152.

Lastly, Petitioner alleges that appellate counsel should have claimed ineffective assistance of trial counsel based on counsel's failure to raise a claim of judicial misconduct.  According to Petitioner, Judge Gillert knew of District Attorney Harris's dual commission "as of at least July 2012," and "openly admitt[ed] his incompetence and ignorance in an interview" reported in the Tulsa World newspaper on January 3, 2015, *see* Doc. 20 at 43-44.  However, because the claim based on Harris's dual commission is meritless, whether or not Judge Gillert knew of the commission is of no significance.  As to Petitioner's claim concerning Judge Gillert's competence, the newspaper article cited by Petitioner appeared after the conclusion of his direct appeal.  Therefore, although Petitioner misconstrues the "self-effacing" comments made by Judge Gillert

22

during his interview, appellate counsel cannot be faulted for failing to raise a claim based on the article because it post-dated his representation of Petitioner.  This claim of ineffective assistance of appellate counsel is without merit.

In summary, Petitioner fails to satisfy the doubly deferential standard of review imposed by § 2254(d) and *Strickland* and his request for habeas corpus relief on this claim of ineffective assistance of appellate counsel is denied.

### d.  Failure to request an evidentiary hearing

As his final claim of ineffective assistance of appellate counsel, Petitioner complains that appellate counsel failed to request an evidentiary hearing.  Based on the disposition of Petitioner's claims of ineffective assistance of trial counsel discussed above, and upon review of the trial record, the Court finds that appellate counsel had no factual or legal basis to seek an evidentiary hearing under Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, the only authority for requesting an evidentiary hearing on claims of ineffective assistance of trial counsel.  Therefore, appellate counsel did not perform deficiently in failing to request an evidentiary hearing.  Petitioner fails to satisfy the doubly deferential standard of review imposed by § 2254(d) and *Strickland* and his request for habeas corpus relief on this claim of ineffective assistance of appellate counsel is denied.

### *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  Hence, his petition for writ of habeas corpus shall be denied.

## Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing."  28 U.S.C. § 2253.  A petitioner can satisfy the standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citation omitted).

After considering the record in this case, the Court concludes a certificate of appealability should not issue.  Nothing suggests that this Court's application of AEDPA standards to the OCCA's decisions is debatable amongst jurists of reason.  *See Dockins v. Hines*, 374 F.3d 935, 937-38 (10th Cir. 2004).   The Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The original petition for a writ of habeas corpus (Doc. 1) and the supplemental petition (Doc. 20) are **denied**.

2. A certificate of appealability is **denied**.

3. A separate Judgment shall be entered in this case.

ORDERED THIS 7th day of March, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE